## Mode Estate

*Millard A. Ullman, of Ullman & Painter,* for petitioners.

MacPHAIL, P. J., February 23, 1972.—In the matter now before us, petitioners are the executors under the last will and testament of decedent, who died July 13, 1971. One of the petitioners is also the testamentary trustee. The will provides for two trusts, in each of which a different life beneficiary is named. At the death of the life beneficiaries, the proceeds of the respective trusts are distributable to a residuary trust also created under decedent's will and also specifying a different life beneficiary. At the death of the life beneficiary specified in the residuary trust, it is pro-

vided that the entire balance shall be payable to Shriner's Hospitals for Crippled Children which petitioners allege is a charitable corporation duly qualified under the Internal Revenue Code to receive the irrevocable remainder interest in the trust as a charity.

Petitioners pray that we modify or amend "the provisions of the trust" under the last will and testament of decedent so as to reflect her dispositive intent and to comply with the provisions of the Internal Revenue Code, the Tax Reform Act of 1969 and the proposed regulations as to charitable remainders (not yet promulgated); that we prohibit the trustee from performing any actions which would violate sections 4941(d), 4943(c), 4944 and 4945(d) of the code as amended by the Tax Reform Act; that we authorize and empower the trustee and beneficiaries to modify any administrative provision of the will to such extent as may be necessary to obtain the maximum charitable deduction available for tax purposes under the Federal law in force from time to time; and that we approve certain "unitrusts" in the form and substance as attached to the petition.

All necessary parties have either joined in or been notified of the prayer of the petition, including the Attorney General of the Commonwealth (who does not object) and the Attorney General of the United States (who did not respond). It is true that the orphans' court does have exclusive jurisdiction over the administration and distribution of testamentary trusts. It is also true that the orphans' court, through the exercise of the cy pres doctrine, may amend certain trust provisions to carry out the settlor's intent where it is otherwise impossible to carry out that intent. See Restatement of Trusts, Second, §399. It is true that the orphans' courts of Pennsylvania have used the doc-

trine of deviation from trust terms where compliance with an administrative provision of a trust is impossible, illegal, or in conflict with the essential purpose of the trust. See Longbotham's Estate, 346 Pa. 94 (1943) and Restatement of Law of Trusts, Second, sections 167 and 381. Finally, it is true that the Pennsylvania orphans' courts, including this one, have permitted the amendment and modification of testamentary trusts to comply with the compulsory provisions of the Tax Reform Act in order to retain or obtain favorable tax treatment for such trusts from the Internal Revenue Service.

Therefore, since we have jurisdiction, authority and precedent, we have no difficulty in acceding to that part of the prayer of the petition which asks that we modify each of the trusts set forth in the will now beofre us to include the prohibitory provisions of the Tax Reform Act of 1969. (We do not reach the question of whether it is necessary for us to do so in view of the provisions of Act No. 23 of the General Assembly enacted June 17, 1971.)

However, with respect to the remaining parts of petitioner's prayer, we have exceedingly great reservations and we will refuse to act as requested. While Act 23, previously referred to, does state that its provisions do not "preclude a Court from authorizing a deviation from the expressed terms of an instrument governing a charitable organization," we certainly do not interpret that language as expanding any powers the court may have had to do those things prior to the enactment of the legislation. We are not dealing here with the terms of an instrument governing a "charitable organization," rather, we are dealing here with the sanctity of a *will*. It is provided in the Wills Act of 1947, sec. 5, 20 PS § 180.5, that "No will or codicil in writing, or any part thereof, can be revoked or altered

otherwise than: (1) Will or codicil. By some other will or codicil in writing, (2) Other writing. By some other writing declaring the same, executed and proved in the manner required of wills, or (3) Act to the document. By being burnt, torn, cancelled, obliterated, or destroyed, with the intent and for the purpose of revocation, by the testatory himself or by another person in his presence and by his express direction. If such act is done by any person other than the testator, the direction of the testator must be proved by the oaths or affirmations of two competent witnesses."

It is true that the learned Judge Taxis in Smith Foundation, 21 Fid. Rep. 242 (1971), permitted the amendment of an irrevocable perpetual foundation to include the compulsory provisions of the Tax Reform Act of 1969, but no case has gone as far as petitioners would have us go here. In Weaver Mathematical Scholarship Foundation, 9 Adams 67, at page 72, it was held that, "Essential to its [doctrine of deviation] application is a finding that the term of the trust to be deviated from is an *administrative* one, so that it is not positively essential to the settlor's scheme." (Italics and parenthetical language ours.)

However, we do not think the doctrine of deviation gives the court authority to authorize a deviation from *any* administrative provision of a trust, and we certainly do not think that such a doctrine gives the court any authority to authorize the *trustees and beneficiaries* to modify administrative provisions of a testamentary trust, whether or not it will enable the trust to obtain the maximum charitable deduction. If such modifications are necessary, the courts must make that decision. They cannot give a "blank check" to trustees and beneficiaries to amend and modify at will, no matter how worthy the net result might be.

Neither is there any authority known by or cited for

us which would permit us to authorize the trustee and beneficiaries under a will to execute qualifying charitable remainder unitrusts which, in *substance*, go far beyond administrative provisions. As an illustration of what we mean, in the present case, testatrix provided in her will, in the residuary trust, that "upon the death of by brother, Eugene K. Hassler, the remaining income and principle shall be paid and passed to Shriner's Hospitals for Crippled Children in memory of my parents." She did not provide that the proceeds should be paid to that worthy organization if it qualified as a charity under the Revenue Code; rather, her interest was that the proceeds would go as a memorial to that organization with no qualifications whatsoever. However, in the "unitrust" suggested for our approval by the petitioners, it is provided:

"Upon the death of the last to die of the beneficiaries specified in Article 2, the trust estate as then constituted shall forwith be distributed, free of trust, to Shriners Hospitals for Crippled Children, 323 North Michigan Avenue, Chicago, Illinois, a Colorado corporation, for its corporate uses and purposes in the operation of its charitable hospitals absolutely and free from restrictions of any kind whatsoever, provided, however, if such organization is not an organization described in Section 170(c) of the United States Internal Revenue Code at the time the trust estate is to be distributed to it, the trust estate shall be transferred to such other organization or organizations which are described in and meet the requirements of Section 170(c) of the United States Internal Revenue Code *as may be selected by the trustee.*" (Italics supplied.)

It is plain to us that such a modification is impermissible under any doctrine or authority available to this court.

We have examined the language of the trust in the will closely and we can see no problems at this time with respect to the administrative provisions as therein set forth, nor is there any allegation that any of those provisions are illegal, impractical or in conflict with the essential purpose of the trust. The truly administrative changes set forth in the unitrusts are unnecesary to carry out or preserve testatrix' interest. The substantive changes are beyond the scope of our authority.

Moreover, it must be remembered that this decedent did not die until July of 1971, more than a year after the enactment of the Tax Reform Act. If *she* had wanted to make any changes in her will to assure the maximum tax benefits, she could have done so. Since testatrix did not act, we may assume her choice was made purposefully, voluntarily and intelligently and it would, at the very least, be inappropriate for us to act now in her stead.

## DECREE OF COURT

And now, February 23, 1972, upon consideration of the petition filed in these proceedings on December 21, 1971, and it appearing from the proof of notice filed in these proceedings that the Attorney General of the Commonwealth of Pennsylvania has received written notice of these proceedings in accordance with citation issued pursuant to order of court dated December 21, 1971, and that the Attorney General of the Commonwealth of Pennsylvania, in his communication dated February 3, 1972, states that he has no objection to the granting of the prayer of the petition; and it appearing from the proof of notice filed in these proceedings that the Attorney General of the United States of America has received written notice of these proceedings in accordance with citation issued pursuant to order of court dated December 21, 1971, and in accordance with amendment of citation dated January 14, 1972,

authorizing the United States of America to appear as a party in interest prior to February 18, 1972, and that the United States of America has chosen not to appear; and it appearing that all other parties in interest have joined in and consented to the prayer of the original petition; and it appearing that the charitable purposes of the testamentary trust will be protected and assured of fulfillment by certain of the amendments or modifications of the testamentary trust as prayed for, and that the authority cited and the doctrine of deviation discussed in the memorandum of authority submitted by counsel for petitioner and filed herewith authorizes the granting of certain of the prayers of the petition; and the court being satisfied that certain of such requests and amendments or modifications relate only to the administrative provisions of the trust.

It is decreed that the trusts created under the last will and testament of Jane H. Mode, deceased, in paragraphs II, III and V, be amended or modified in their administrative provisions so as to reflect her dispositive intent and to comply with provisions of the Internal Revenue Code and the Tax Reform Act of 1969 in that:

The trustee in said trust is prohibited from:

(a) engaging in any act of self-dealing as described in section 4941(d) of the Internal Revenue Code of 1954, as amended; (b) retaining any excess business holdings as defined in section 4943(c) of that code; (c) making any investment in such manner as to subject the trust to tax under section 4944 of that code; or (d) making any taxable expenditure as defined in section 4945(d) of that code.

In all other particulars, the petition for amendment or modification of the testamentary trusts created under the last will and testament of Jane H. Mode, deceased, is herewith denied and refused.

## Howanec Estate

Before Klein, A. J., Bolger, Saylor, Shoyer and Silver-stein, JJ.

## ADJUDICATION

BOLGER, J., January 8, 1971.—Theresa Howanec died April 27, 1969, not survived by a spouse but survived by four children, one of whom is a daughter, Anna Davis, executrix under a will dated September 14, 1951. She filed a petition for a citation directing another child of the decedent, Margaret Newton, to show cause why she should not turn over to the estate certain funds held in a savings account in the name of decedent, trustee for Margaret Newton. The issue was heard at the audit of the executrix's account. In addition to oral testimony, the executrix offered an unsigned copy of a will executed by the decedent in 1963, the original of which was retained by the decedent, but was not located at her death. This writing contained a clause in which decedent expressed an intent that Margaret Newton should divide the moneys on deposit among the testatrix's children, the effect of which would revoke the tentative trust. The

writing was not offered as a testamentary instrument but rather as evidence showing that decedent had a fixed present intent to revoke the trust account. However, it cannot be so limited. The clause is contained in a will which is an ambulatory instrument which speaks as of the date of death. The effect of any such limitation would be to inject a probate element into a distribution proceeding: Rockett Will, 348 Pa. 445. The oral testimony concerning the question of revocation of the trust account was so conflicting that no reliance can be placed upon it by the auditing judge and he is required to relegate himself to the documentary testimony. That consists of the unsigned copy of the will of 1968 but this affords no comfort for the reason that the original was retained in the possession of the testatrix and, not being found there at her death, the presumption is that she destroyed it: Okowitz Will, 403 Pa. 82; Sando Will, 362 Pa. 1. Counsel for the executrix cites Koehler Estate, 316 Pa. 321, as authority for allowing the writing in evidence to show the intent of testatrix. Our view is inapposite. In Koehler Estate it was held that a prior will could not be shown to have been revoked by parol evidence of a later will. Even though testatrix did express an intent, the later revocation of the 1963 instruments extinguishes that expressed intent. This view is supported by the fact that the account title was not changed at any time prior to the death of decedent in 1969. Counsel for the beneficiary contends that executrix cannot have the benefit of one part of the 1963 writing without assuming the burden of other parts; that is, that the 1963 will revoked the 1951 will. With this we agree. In Ingels Estate, 372 Pa. 171, the beneficiary of a similar bank account offered a letter written by testatrix to prove that the account was irrevocable. The court held that other parts of the letter led to a different

conclusion. In this case the 1963 will would revoke that of 1951. Under Section 6 of the Wills Act of 1947 as amended, it is provided:

*Thomas M. Thistle, Jr.,* for exceptant.

*Edward J. Gilson,* for Margaret Newton.

*Henry Fineman,* for Commonwealth.